IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| GKG CAPITAL MANAGEMENT LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | 1:05cv553 |
| ) | |
| PIONEER INVESTMENTS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

On November 16, 2006, a magistrate judge issued a Report and Recommendation ("Report") in which he recommended that a default judgment be entered in favor of plaintiff GKG Capital Management Ltd. ("GKG") against defendant Pioneer Investments, Inc. ("Pioneer") in the amount of $1,666,500.00. The parties were advised that any exceptions to this Report had to be filed within ten days of receipt of the Report and that failure to file a timely exception waived appellate review of any judgment based on the Report. As of January 23, 2007, no exceptions have been filed.

Having reviewed the case file, the Court finds for the reasons stated below that the record does not support the recommendation of the magistrate judge.

**Background**

GKG is a Delaware corporation with its principal place of business in Virginia. Rex E. Reese, a licensed attorney in Virginia, is the sole director, officer, and owner of GKG.

Pioneer is a Florida corporation with its principal place of business in Florida that is principally owned and controlled by Ligia Maria Cordero de Ramirez, a Costa Rican citizen. GKG has brought a breach of contract claim against Pioneer, asserting the breach of a Cooperative Venture Agreement ("CVA"), apparently negotiated over email and fax, in which Pioneer contracted with GKG for GKG to invest significant funds provided by Pioneer for the benefit of a third party, Teotihuacan Foundation, Inc. ("TFI").[1] The funds were in the form of a certificate of deposit ("CD") valued at $500,000,000 (five hundred million dollars).

GKG asserts that the two parties entered into the CVA on January 31, 2005.[2] According to the terms of the CVA, Pioneer unconditionally agreed that within five banking days of January 31, 2005 ("the effective date"), Pioneer would have the CD in the amount of $500,000,000 reissued by Chase Manhattan Bank ("Chase"), in the name of GKG; Pioneer would deposit the CD with the Depository Trust and Clearing Corporation ("DTCC") and have it titled in GKG's name; and upon the deposit of the reissued CD with the DTCC, the CD would be unencumbered subject to GKG's sole

---

[1] There is no evidence in the record that the agents of GKG and Pioneer ever met in person. As the sole shareholder and officer of GKG is a licensed attorney, it is not clear from the record why Pioneer chose GKG to invest its assets and manage those investments, or how the parties came in contact with each other.

[2] The CVA was allegedly signed by Ligia Maria Cordero de Ramirez in her capacity as president of Pioneer.

2

control, including the right to transfer, assign, and encumber the CD and use it as collateral to secure a credit facility.

Under section 3 of the CVA, upon transfer of the CD to GKG, GKG would hypothecate the CD, pledging it to J.P. Morgan Chase Bank as security for a credit facility, and invest the loan proceeds therefrom in investments selected by GKG and meeting the definition of "Permitted Investments" stated in the CVA. The net profits from such investments, equaling gross income less interest on the credit facility, would be shared equally among GKG, Pioneer, and TFI.

GKG alleges that Pioneer failed to arrange for the reissue of the CD or otherwise perform as required under the CVA. Instead, Pioneer demanded an "advance fee" of $300,000 in order to perform, which was not required by the CVA and which GKG refused to pay. GKG demanded performance by Pioneer when Pioneer failed to perform, but Pioneer refused. Subsequently, GKG contacted Chase and DTCC and received information that the CD never existed, was never placed on deposit at DTCC, and neither Chase nor DTCC had any knowledge of, or relationship with, the defendant. At that time GKG formed the belief that Pioneer had perpetrated a fraud, namely an "advance fee scam," hoping to get the advance fee from GKG before GKG realized that the contract was bogus.

GKG asserts a breach of contract claim against Pioneer for

failing to perform the terms of the CVA, namely arranging for the reissue and transfer of the CD to GKG. GKG's initial complaint sought the equitable remedy of specific performance, demanding that the CD be reissued and transferred to GKG as required by the CVA. After GKG determined that the CD never existed and specific performance was impossible, GKG filed its First Amended Complaint, seeking money damages for lost profits in the amount of $1,666,500.00, representing the minimum profit GKG alleges it would have made if it had been allowed to invest the CD as outlined in the CVA.

### Jurisdiction and Procedural History

This Court has subject matter jurisdiction over this matter pursuant to 29 U.S.C. § 1332. There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

Personal jurisdiction over the defendant is appropriate under Virginia's long-arm statute, Va. Code § 8.01-328.1(A)(1), and is consistent with the dictates of due process based on the defendant's contacts with Virginia. The defendant negotiated with the plaintiff, a corporation with its principal place of business in Virginia, via email exchanges with the plaintiff in Virginia. The CVA clearly sets forth the plaintiff's address and phone number in Virginia, and called for the plaintiff to perform its requirements under the CVA in Virginia. Thus, the defendant

transacted business in the Commonwealth, as required by the long-arm statute. Moreover, by contracting with a corporate resident of Virginia, the defendant was on notice that it could be subject to suit in Virginia. The dictates of due process are therefore satisfied.

GKG filed its original complaint on May 17, 2005, seeking equitable relief, along with a motion for a temporary restraining order without notice and for preliminary injunction. Those motions were heard and granted in June 2005. Pioneer did not appear or otherwise defend against the motions. In July, GKG filed a Certificate of Compliance notifying the Court that the defendant was served by the Secretary of the Commonwealth on July 11, 2005. Pioneer never responded. GKG sought entry of a default, which was entered on September 21, 2005. An ex parte hearing on damages was initially scheduled, then rescheduled multiple times and not held before GKG filed its First Amended Complaint on February 7, 2006.[3]

Thereafter, the case lay dormant until the Court issued an Order to Show Cause on April 13, 2006 as to why the civil action

---

[3] On January 23, 2006, the Court received a Request to Postpone Hearing from Pioneer. This filing is not deemed a responsive pleading and is the only filing of any kind received from the defendant. It does, however, bear the signature of a Ligia M. Cordero Poveda, as president of Pioneer. The language of the filing makes it clear that Pioneer had received notice of the litigation but also reveals that Cordero Poveda is not a native English speaker.

5

should not be dismissed for the plaintiff's failure to expeditiously prosecute its complaint and failure to state a claim upon which relief could be granted. GKG responded on May 3, 2006, and pursuant to the Court's order served the First Amended Complaint on the defendant by the Secretary of the Commonwealth, with an attendant Certificate of Compliance, on July 7, 2006. Again, Pioneer did not file an Answer or other responsive pleading to the First Amended Complaint. In response to a request by GKG, the Clerk of the Court entered default as to Pioneer on August 21, 2006. On September 27, 2006, GKG filed a Motion for Default Judgment, along with a supporting memorandum and affidavit from Rex E. Reese. The matter was heard by a magistrate judge on October 20, 2006, and the instant Report issued as a result of that hearing.

### Analysis

The Fourth Circuit has held that while the "well-pleaded allegations of fact" are admitted as a consequence of a default, conclusions of law are not deemed admitted and the court must independently determine whether the well-pleaded allegations support the relief sought in the action. Ryan v. Homecomings Financial Network, 252 F.3d 778, 780 (4th Cir. 2001). The district court is required to exercise sound judicial discretion in determining whether a default judgment should be entered. Among other factors a court should consider in entering a default

judgment are the amount of money involved; whether material issues of fact or issues of substantial public importance are at issue; and whether the grounds for default are clearly established or are in doubt. 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2685 at 30-38 (1998).

There is no question that the defendant in this civil action has defaulted. However, GKG seeks damages of $1,666,500.00 for a contract executed via email and fax. These damages are wholly speculative. See Shepherd v. Davis, 265 Va. 108, 124 (2003), citing Barnes v. Quarries, Inc., 204 Va. 414, 418 (1963) ("Damages based on uncertainties, contingencies, or speculation cannot be recovered."). GKG bases its damages request on a rate of interest it alleges it would have earned if it had been allowed to invest the $500,000,000 CD, an instrument that it now admits never existed, and the existence of which GKG did not confirm before entering the contract.

Moreover, upon examination of the record, the Court questions whether there is sufficient evidence that the CVA is actually signed by the party against whom it is sought to be enforced. The Ligia M. Cordero signature on the CVA presented by GKG and the "Ligia M. Cordero" appearing on the defendant's Request to Postpone Hearing (Docket # 28) appear quite

different.[4] GKG has submitted no evidence of Pioneer's intent to be bound other than the signed CVA, and the validity of the signature presented is suspect. Furthermore, there is no evidence in the record of the plaintiff suffering any actual damage or providing any consideration for Pioneer entering into the CVA. On this basis the Court finds that the facts alleged do not support the relief sought by GKG.[5]

As the subject matter of the contract never existed, GKG's cause of action sounds more appropriately in fraud than in breach of contract. However, an element of a fraud claim is reasonable reliance by the victim on misrepresentations of the other party. See <u>Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.</u>, 256 Va. 553, 557 (1998). It would not have been reasonable

---

[4] It does not require an expert to see that the signature on the CVA differs significantly from the signature on the Request to Postpone:



(CVA)  (Request to Postpone)

[5] Even were the Court to find that a valid contract existed, the contract required GKG to act as an investment broker for Pioneer; GKG was not required to do anything at all until the money to be invested was provided by Pioneer. GKG thus provided no consideration for this contract until GKG was in a position to perform when the money was provided. GKG has not presented any evidence of lost business opportunities or any other injury resulting from Pioneer's conduct. Thus, Pioneer's decision not to use GKG as its broker or agent did not harm GKG.

for any corporation or lawyer to enter into the agreement alleged here without having confirmed the existence of the CD at issue or otherwise investigating the bona fides of Pioneer. The record is devoid of any evidence that GKG conducted any kind of reasonable investigation and there is no allegation of money spent to negotiate or execute the contract or to prepare to perform on the contract. On this record, GKG has suffered no harm other than not earning any of the profit anticipated from the investment of assets belonging to Pioneer, profit that is speculative and that was never going to be earned since the asset never existed. Given these facts, the Court finds that although there has been a default, the plaintiff is not entitled to a judgment.

## Conclusion

For the reasons stated above, the recommendation in the Report will be reversed and this complaint will be dismissed by an Order issued with this Opinion.

Entered this 25th day of January, 2007.

/s/
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia